IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| STEPHANIE JONES | : CIVIL ACTION – LAW |
|---|---|
| Plaintiff | : No. 2:20-cv-01927-RBS |
| vs. | : |
| EASTERN AIRLINES, LLC and JOSEPH MAROTTA and STEVE HARFST | : JURY TRIAL DEMANDED |
| | : *Electronically filed* |
| Defendants | : |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT UNDER RULE 12(b)(6)**

Plaintiff Stephanie Jones was fired because she asked her employer about her right to leave under federal law, and because she is Black. Her termination was unlawful and the Defendants' Motion should be denied. First, Plaintiff has stated valid claims for interference and retaliation under the FMLA and the FLSA, as the law protects an employee who makes a good-faith inquiry into her rights or gives notice under those laws, even if she is not entitled to leave on the date of her inquiry.[1] This Court rejected the exact defense put forward by Defendants in Sine v. Rockville Mennonite Home, 275 F.Supp.3d 538, (E.D. Pa. 2017), and it should reject it here. Second, the pertinent portions of the FFCRA, the new notice and anti-retaliation provisions in the EPSLA (Division E of FFCRA), went into effect upon enactment, on March 18, 2020. See Ex. 1, Divisions C and E of FFCRA. Third, Plaintiff has stated a valid FLSA retaliation claim. Finally, Plaintiff

---

[1] The FFCRA amended FMLA to (1) add an additional type of leave, to care for a child whose school has closed due to COVID-19; and (2) to shorten the service requirement from one year to thirty days. 29 U.S.C. §2620(a)(1)(A)(i). The FFCRA did not alter the existing FMLA anti-retaliation and non-interference provisions under which Plaintiff brings her FMLA claims in this action, which were enacted in 1993.

1

has stated a cause of action for race discrimination with detailed statements in her Complaint as to how she was treated differently than non-Black employees.

Defendant Eastern Airlines has received over $10 million in federal bailout funds for the COVID-19 emergency, and that money was intended to ensure that Defendant keep its employees on the payroll. Moreover, the paid leave granted by Congress in the FFCRA is ultimately paid for by the United States Treasury, in the form of refundable tax credits. It is unconscionable for Defendants to come before this Court and claim that they had a free window to retaliate by terminating employees who were pre-eligible for FMLA/FFCRA leave, and who requested such leave, between March 18 and April 1, 2020. That is not the law.

## I. STANDARD FOR CONSIDERATION OF RULE 12(b)(6) MOTIONS

On a Rule 12(b)(6) Motion to Dismiss, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. City of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." Sine v. Rockhill Mennonite Home, 275 F.Supp.3d at 540, citing Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is plausible "when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## II. FACTUAL BACKGROUND

Beginning in March 2020 the nation has faced an unprecedented emergency – the global pandemic of the COVID-19 virus. Officials in both the federal and state government have taken emergency measures to address the crisis. The Pennsylvania Governor issued an emergency stay-at-home Order effective March 23, 2020. See Ex. 2. On March 18, 2020, Congress enacted and the President signed several emergency laws, collectively referred to as the Families First Coronavirus Relief Act (the "FFCRA"), which were intended to immediately address the impossible situation faced by America's workers – the need to care for children whose schools were shuttered, and the need to avoid spreading the COVID-19 infection by working from home, where possible. These laws included the Emergency Family and Medical Leave Expansion Act (the "EFMLEA") and the Emergency Paid Sick Leave Act (the "EPSLA").

Both the EFMLEA and the EPSLA have multiple components imposing certain rights and obligations on workers and employers. These include a right to certain paid and unpaid leave (the "Leave Provisions"); and, with respect to the EPSLA, the obligation of employers to give notice of employee rights to their workers (the "Employer Notice Provisions"); the obligation of workers to give notice of their need for leave (the "Worker Notice Provisions"); and a prohibition on certain employer conduct, namely to discharge, discipline or in any other manner discriminate against workers seeking leave or lodging complaints (the "Anti-Retaliation Provisions.") The EFMLEA did not set forth new notice, anti-retaliation or non-interference provisions, because it was enacted as an amendment to the FMLA, and thus all of the FMLA's notice requirements and prohibitions on retaliation and interference apply to workers seeking leave under the new Leave Provisions in the EFMLEA.

Unlike in the other statutes cited in Defendants' brief, Congress did not enact a prospective date in the EFMLEA or the EPSLA. On the contrary, Congress stated that "This Act shall take effect not later than 15 days after the enactment of this Act." Absent an express provision by Congress setting a specific prospective date for a statute to take effect, all laws are effective immediately upon enactment. Johnson v. United States, 529 U.S. 694, 700; 120 S.Ct. 1795, 1801 (2000). Congress set no such prospective date in the FFCRA. On the contrary, in light of the fact that these Acts were expressly named "emergency" legislation, it is obvious that Congress intended for as much as possible of the law to have immediate effect. And that is how the Department of Labor behaved.

Department of Labor Activity After FFCRA Passage

Initially, the Departments of Labor and Treasury announced that employers and employees could take advantage of the Leave Provisions "immediately." See Ex. 3 (March 20, 2020 Joint Statement).[2] Subsequently, on March 28, 2020, the Department of Labor ("DOL") issued Questions and Answers, which announced that the Leave Provisions of the Act would take effect on April 1, 2020. See Ex. 4, Question One:

> **What is the effective date of the Families First Coronavirus Response Act (FFCRA), which includes the Emergency Paid Sick Leave Act and the Emergency Family and Medical Leave Expansion Act?**
>
> The FFCRA's paid leave provisions are effective on April 1, 2020, and apply to leave taken between April 1, 2020, and December 31, 2020. (Question one.)

---

[2] Plaintiff references various DOL documents for the purpose of factual background only. None of these documents has the force of law. Only actual regulations issued pursuant to the Administrative Procedure Act have the force of law. Christensen v. Harris County, 529 U.S. 576, 587; 120 S.Ct. 1655, 1662 (2000) (DOL policy statements, agency manuals and enforcement guidelines lack the force of law and are not entitled to Chevron deference).

4

Since the EFMLEA merely amended the FMLA and added new covered leave, the existing FMLA notice, anti-retaliation and non-interference provisions were a matter of existing law, in effect since 1993. The EFMLEA also shortened the time in service requirement to thirty days, instead of one year. 29 U.S.C. §2620(a)(1)(A)(i). As of March 18, 2020, workers like Plaintiff were pre-eligible for EFMLEA leave, just as any worker may be pre-eligible for leave when she discovers that she has a right to leave in the future, e.g., because she is expecting a baby six months hence.[3] This is so even if she is not eligible, e.g., because of insufficient time on the job, on the date she discovers the need for future leave.

Mindful of the unusual step of Congress enacting an employment law that went into effect immediately, which Congress had never done before, on March 24, 2020, the DOL issued a Field Assistance Bulletin to guide the DOL as to how the DOL would enforce the new law. See Ex. 5. The guidance noted that the President had signed the law on March 18, 2020 and advised that the DOL would have a temporary non-enforcement for violations of the Act that occurred between March 18 and April 17, 2020, in order to enable employers to come into compliance. However, this temporary non-enforcement was <u>contingent on employers remedying violations by making employees whole as soon as practicable</u>:

> The Department will not bring enforcement actions against any public or private employer for violations of the Act occurring within 30 days of the enactment of the FFCRA, i.e. March 18 through April 17, 2020, provided that the employer has made reasonable, good faith efforts to comply with the Act. For purposes of this non-enforcement position, an employer who is found to have violated the FFCRA acts "reasonably" and "in good faith" when all of the following facts are present:

---

[3] In <u>Sine v. Rockville Mennonite Home</u> this Court considered an employee who had made multiple requests for leave to have a hysterectomy before her one year anniversary date. She had not specified the date on which she planned to have the surgery. Plaintiff claimed in her lawsuit that she planned to have the surgery after her one year anniversary date. This Court upheld her claims for interference and retaliation, noting that "since the FMLA contemplates notice of leave in advance of becoming an eligible employee, the statute must necessarily protect from interference and retaliation those currently non-eligible employees who give such notice of leave to commence once they become eligible employees." 275 F.Supp.3d at 543.

1. The employer remedies any violations, including by making all affected employees whole as soon as practicable. As explained in a Joint Statement by the Department, the Treasury Department and the Internal Revenue Service (IRS) issued on March 20, 2020, [2] this program is designed to ensure that all covered employers have access to sufficient resources to pay required sick leave and family leave wages.[3]

2. The violations of the Act were not "willful" based on the criteria set forth in McLaughlin v. Richland Shoe, 486 U.S. 128, 133 (1988) (the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited…").

3. The Department receives a written commitment from the employer to comply with the Act in the future.

The DOL complied with Section 5103 of the Act's (the "Employer Notice Provisions") requirement that it distribute a model notice provision within seven days of enactment. On March 25, 2020 (updated on March 27, 2020), the DOL issued a poster which employers were required to post and distribute. See Ex. 6.

On April 6, 2020, the DOL issued a temporary rule, published at 29 CFR Part 826, pursuant to the authority granted in the FFCRA (the "Rule"). In the Rule, the DOL specified that "An Eligible Employee is entitled to take up to twelve workweeks of Expanded Family and Medical Leave during the period April 1, 2020 through December 31, 2020." § 826.23. The Rule does not contain any provision stating that the interference or retaliation provisions of the FMLA or the FFCRA were stayed or made prospective or were invalid during the time period from March 18 to April 1, 2020. The Rule does not set an effective date for the entire FFCRA, or for any part of it other than the Leave Provisions as quoted above. The Rule does contain an effective date for the Rule itself, as follows:

> "(b) *Effective period.*
>
> **(1)** This part became operational on April 1, 2020, and effective on April 2, 2020.
>
> **(2)** This part expires on December 31, 2020." 29 CFR 826.10(b).

Defendants' Motion does not quote this Rule correctly. Even though Defendants (deceptively) put quote marks around their characterization of this section of the Rule, they state it incorrectly, using different language entirely and most importantly, leaving out the word "Part." See Defendants' Memorandum at 4 (falsely quoting the Rule as "Effective April 2, 2020 through Dec. 31, 2020"). Part is a reference to a segment of the Code of Federal Regulations. "Each title is divided into chapters, which usually bear the name of the issuing agency. Each chapter is further subdivided into parts that cover specific regulatory areas. Large parts may be subdivided into subparts. All parts are organized in sections, and most citations in the CFR are provided at the section level. A list of agencies and where they appear in the CFR may be found in Appendix C of the U.S. Government Manual." See About the Code of Federal Regulations, Ex. 6.

Thus, the section of the CFR that Defendants claim constitutes an effective date for the entire FFCRA is, in fact, merely an effective date of the DOL's Rule, which is codified at 29 CFR Part 826.

Stephanie Jones' Protected Activity

Stephanie Jones is a single mother whose son's school was closed in March 2020 due to the COVID-19 pandemic. Amended Complaint ¶¶ 11-12. After the enactment of the FFCRA, Ms. Jones inquired repeatedly with Defendants as to flex time or leave to care for her son while his school was closed. Id. at ¶¶ 18-28. It is important to note that initially Plaintiff made it clear that she could perform all of her work duties while telecommuting from home, if she was given

7

flexibility. Amended Complaint ¶¶ 17-21. In a phone call on March 23, Defendant Marotta told Plaintiff she was eligible for leave. Id. at ¶ 25.

The following day, having heard no response to her request for flexibility, despite knowing that Defendants were allowing other, non-Black employees to work from home, Plaintiff sent a formal email to Defendants. Amended Complaint ¶ 28. Plaintiff noted that she wanted to do her job with the flexibility to care for her son and to be treated like other employees who worked from home. Then she specifically cited family and medical leave and the FFCRA in that email, and asked Defendants to "proceed with the process of the expanded family and medical leave under the Families First Coronavirus Response Act" and to let her know what information they needed from her. Id.[4] Defendant Marotta responded with an openly hostile email, accusing Plaintiff of using the newly-passed laws as a "hammer." Id. ¶ 29. Within three days of Plaintiff's written invocation of her rights, Defendant Marotta terminated Plaintiff's employment in a phone call on March 27, 2020. Defendants did not communicate at all with Plaintiff about her request for leave. They did not advise her of her rights, or ask her for any information, or tell her whether she was eligible for leave or would or would not be granted leave. Id. ¶¶ 30-39.

Basis for Plaintiff's Race Discrimination Claim under § 1981

Defendants falsely state in their Motion to Dismiss Plaintiff's race discrimination claim that the "lone allegation" concerning race discrimination is in ¶ 152 of her Complaint. That is a ridiculous statement. On the contrary, Plaintiff's Amended Complaint sets forth the following facts in support of her § 1981 claim at the following paragraphs:

---

[4] Note that as of Plaintiff's March 24 email, there was no law or regulation setting the effective date of the Leave Provisions. Plaintiff did not specify on what date her leave should commence, and she did not know then when the Leave Provisions would allow her to start her leave. She only knew that Congress had passed the FFCRA, and Defendant Marotta had told her she was eligible for leave.

8

42. Plaintiff was the only Black Director at Eastern Airlines, and one of very few Black women in management.

43. Throughout Plaintiff's employment with Defendant Eastern Airlines, Defendants and their agents and employees treated Plaintiff differently than similarly-situated non-Black employees. For example, Defendants allowed similarly-situated non-Black employees and third party vendors to attend the inaugural flight to Ecuador in mid-January 2020, but did not allow Plaintiff to attend even though it was typical that people in her job, Director of Network Planning, would go in the airline industry.

44. Defendants permitted non-Black employees to delegate tasks to Plaintiff that were menial or unpleasant, which were not within Plaintiff's normal job duties.

45. During the COVID-19 emergency, Plaintiff and many other employees performed all of their duties from home by telecommuting. At one point, Defendants informed Plaintiff that they wanted her to come in to the office to work instead of tele-commuting. Defendants were aware that Plaintiff preferred to work from home because she had a young child whose school was closed, as well as an elderly mother with asthma who was sick with symptoms including a severe cough. Similarly-situated non-Black, non-African-American employees were allowed to work remotely. Plaintiff's position could be performed, and had been performed for a week by Plaintiff, remotely. Management would not tell Plaintiff why she could not work remotely but non-Black employees were allowed to do so.

46. Defendants displayed negative attitudes toward Black people. For example, on and around Martin Luther King Day, Defendant Harfst said about a customer whose people had off, "These people will take off for anything."

47. Plaintiff believes and avers that Defendants' differential treatment of her, and the termination of her employment, was because of her race and color, Black.

48. Plaintiff was replaced by a non-Black man shortly after her termination.

III. LEGAL DISCUSSION

   A. The Effective Date of the Anti-Retaliation Provisions of the EPSLA

Plaintiff has brought claims for interference and retaliation, under both the FMLA and under the FFCRA. The new Anti-Retaliation Provisions in the FFCRA are set forth in Section 5104 of the EPSLA. See Ex. 1. Plaintiff's right to be free from interference and retaliation for invoking her right to family and medical leave is set forth in the FMLA, which has been in effect since 1993, and which was amended in the FFCRA to shorten the time-of-service requirement to thirty days for the new type of leave authorized by the EFMLEA. See 29 U.S.C. § 2620. Defendants' first argument is that all of Plaintiff's FFCRA claims should be dismissed because the wrongdoing occurred before the effective date of the statute. Defendants claim, without citing to any law or regulation, that the effective date of the statute was April 2, 2020. This claim is wrong. The provisions of the FFCRA pertinent to this action, the Anti-Retaliation Provisions in the EPSLA, and the shortening of the FMLA time-of-service requirement to thirty days, were effective upon the enactment of the law, on March 18, 2020.

"[W]hen a statute has no effective date, absent a clear direction by Congress to the contrary, it takes effect on the date of its enactment." Johnson v. United States, 529 U.S. 694, 700; 120 S.Ct. 1795, 1801 (2000). The EPSLA and the EFMLEA itself do not decree a prospective date, but rather order that the laws take effect "no later than" two weeks from enactment. At the same time, the law empowers the Secretary of Labor to issue regulations pursuant to the Administrative Procedure Act, although it does not specifically authorize the Secretary to postpone the effective date of any provisions of the Act. The fair meaning of the law is that its provisions were effective immediately unless the Secretary exercised his authority to issue APA regulations

to the contrary.[5] As explained in this brief above, the DOL took actions consistent with the non-Leave Provisions portions of the FFCRA being effective immediately upon enactment. The DOL prepared and distributed the statutorily required employer notice on March 25, 2020 and ordered employers to post and distribute it, and the DOL issued Field Assistance stating the circumstances under which DOL would decline to enforce violations that happened between March 18 and April 17. See Exs. 5 and 6.

As set forth above, the only regulation on the topic of effective date sets the dates for the Leave Provisions as between April 1 and December 31, 2020. There is no regulation setting a prospective effective date for any other provision of the FFCRA upon which Plaintiff bases her claim. In fact, it would be anomalous to interpret the statute as withholding protection from retaliation and interference between March 18 and April 1, 2020. The law imposes an affirmative duty on workers to notify their employers "as soon as practicable" of their need for leave – just as the FMLA has always done. See Sine v. Rockhill Mennonite Home. In Sine, this Court noted that under the FLMA:

> [A]n employee must "provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave." 29 U.S.C. § 2612(e)(1) & (2)(B). In addition to the FMLA's thirty days' notice requirement under 29 U.S.C. § 2612(e)(2)(B), the Department of Labor advises that where an employee knows that he or she will require future leave with the date uncertain, the employee must nevertheless "advise the employer as soon as practicable if dates of scheduled leave change or are extended, or were initially unknown." 29 C.F.R. § 825.302(a). "The determination of whether an

---

[5] Congress knows how to make a law with a prospective effective date and it has done so on many occasions. For example, Section 716 of the Civil Rights Act of 1964 states "This title shall become effective one year after the date of its enactment." Section 405 of the FMLA states "Except as provided in paragraph (2), titles I, II, and V and this title shall take effect 6 months after the date of the enactment of this Act." Section 108 of the Americans with Disabilities Act states "This title shall become effective 24 months after the date of enactment." No such language was used in the FFCRA because Congress intended as much as possible of the law to take effect immediately.

> employee meets the hours of service requirement and has been employed by the employer for a total of at least 12 months must be made as of the date the FMLA leave is to start." 29 C.F.R. § 825.110(d). 375 F.Supp.3d at 542.

In Sine, this Court cited cases from around the country recognizing that pre-eligible employees are protected from retaliation even if they are not eligible for leave on the date that they give notice, because "it would be "illogical" to interpret the FMLA's notice requirement in a way that requires employees to disclose requests for leave, which would expose them to retaliation, and then provide no remedy." Id. at 543.

Defendants cite to the effective date of the Department of Labor's Temporary Rule, instead of citing to the effective date of the law itself, or the effective date of any of the provisions upon which Plaintiff's claim is based, e.g., the FMLA non-interference and anti-retaliation provisions, or the EPSLA anti-retaliation provisions. Defendant's Memorandum at pg. 4. The effective date of the DOL Temporary Rule is completely irrelevant to this action because the rights Plaintiff seeks to vindicate are set forth in the statutes, not in any DOL regulation.

We know that the DOL contemplated violations of the FFCRA that might be committed before April 2, 2020, because it issued a Field Assistance Bulletin directing a temporary thirty-day period of non-enforcement, from March 18 to April 17, 2020. That temporary reprieve only applied to DOL enforcement actions, not private actions such as Plaintiff's here. And even if it did, Defendants do not fall within that temporary reprieve because they made no effort to remedy their violations. How could violations of the FFCRA occur before April 1, 2020 as contemplated by the DOL Field Assistance, if all of the provisions of that law were prospective? The answer is that the ONLY prospective provision of the law was the dates on which qualifying leave might be taken, April 1 to December 31, 2020. The other provisions, including the Employer Notice Provisions and the Employee Notice Provisions, were effective immediately upon

enactment. And if employees were required to give notice of intended leave as soon as practicable in March 2020, it is not logical to deny them the protection of the law's non-interference and anti-retaliation provisions for notices given in March.

In fact, all of the statutory provisions upon which Plaintiff's claims are based were in effect since March 18, 2020, or earlier.

### B. Plaintiff's FMLA Claim is not "Prospective" and States A Claim Upon Which Relief May Be Granted

Plaintiff has stated a valid claim for retaliation and interference under the Family and Medical Leave Act. The effective date of that statute was decreed by Congress: "IN GENERAL. -- Except as provided in paragraph (2), titles I, II, and V and this title shall take effect 6 months after the date of the enactment of this Act." FMLA § 405. The FMLA was passed in 1993 and was in effect and applicable to Plaintiff in March 2020.

Defendants try to avoid their liability under the FMLA by claiming that the FMLA doesn't protect Plaintiff from retaliation for asking for FFCRA/FMLA leave in March 2020 because the EFMLEA created a new "protected leave." Defendants' Memorandum at 4. Defendants confuse the concept of "protected activity" with a newly-created term, "protected leave." There is no such term as "protected leave." Protected activity is and always has been the same under the FMLA since 1993. See 29 U.S.C. § 2615. Section 2615(a)(1) makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." Section 2615(a)(2) makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." Finally, §2615(b) provides that "[i]t shall be unlawful for any person to discharge or in any other manner discriminate against any individual because such individual -- (1) has filed any charge, or has instituted or caused to be instituted any proceeding,

under or related to this subchapter; (2) has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under this subchapter; or (3) has testified, or is about to testify, in any inquiry or proceeding relating to any right provided under this subchapter." The act of giving notice of intent to take FMLA leave has always been considered protected activity. Erdman v. Nationwide Insurance Company, 582 F.3d 500, 509 (3d Cir. 2009).

Next, Defendants argue that Plaintiff's FMLA claim fails because she had not worked for Defendant for one year before engaging in her protected activity. That argument is wrong for two reasons. First, as this Court held in Sine v. Rockhill Mennonite Home, a worker is protected from retaliation and interference even before she has accumulated enough service to be eligible to take leave under the FMLA. 275 F.Supp.3d 538, 543; see also Pereda v. Brookdale Senior Living Communities, 666 F.3d 1269, (11th Cir. 2012) (FMLA protects pre-eligibility request for post-eligibility leave); Erdman v. Nationwide Insurance Company, 582 F.3d 500, 509 (3d Cir. 2009) (it is the invocation of FMLA rights that triggers protection from retaliation and interference, not the commencement of the leave itself, upholding claim of employee who was fired before he could commence leave).

Second, Congress shortened the one-year-of-service requirement to thirty days in the FFCRA. 29 U.S.C. § 2620(a)(1)(A)(i). And again, there is no law or regulation that puts a prospective date on this provision of the FFCRA, therefore it was effective immediately upon enactment on March 18, 2020. At the time she requested leave, Plaintiff had more than thirty days of service, and therefore she was eligible for leave. Like every other employee working for employers covered by the FFCRA who had thirty days of service, Plaintiff was eligible to take leave under the FMLA/FFCRA, and had an affirmative obligation in March 2020 to give notice of her intent to do so, even if, as we now know, the leave would not commence until April 1, 2020.

14

To argue to the contrary is to suggest that Congress intended all covered employees across the country to wait until 12:01 a.m. on April 1, 2020 to notify their employers of their need for leave to care for children whose schools had closed commencing that very same day! Such a chaotic result cannot be attributed to Congress. On the contrary, the only logical interpretation of the law is that employees were required to give notice as soon as practicable after March 18, 2020, and were consequently protected from interference and retaliation when they did so.

The cases cited in Defendants' brief are not contrary to Sine or Pereda. In fact, they are not on point at all, or they support Plaintiff's claim. Clark v. Allegheny University Hospital was not a retaliation case. It was a simple dispute over whether to count vacation days, holidays and sick days as time worked in the past year, in order to meet the hours worked requirement of the FMLA. The plaintiff was not an eligible employee at the time of commencement of his requested leave because he had only worked 1037.75 hours in the preceding year as of the first date of his last leave, that resulted in his termination for excessive absenteeism. 1998 WL 94803, pg. 5. (E.D. Pa. March 4, 1998).

O'Brien v. Lehigh Valley Health Network supports Plaintiff's claim. In that opinion, the Court rejected the plaintiff's claim based on her request for leave to commence before she was eligible based on time/hours worked. 2019 WL 2642000, pg. 3 (E.D. Pa. June 27, 2019). But the Court held that the plaintiff could state a claim for interference based on her request for leave to commence after the date she had sufficient time in service, even though she was not an eligible employee on the date she requested the leave. Id. pp. 4-5. "Employees are protected by the FMLA's interference and retaliation provisions beginning at the time they invoke their right to FMLA leave, not the time such eligibility begins." (citing Erdman v. Nationwide Ins. Co., 582 F.3d 500, 509 (3d Cir. 2009)). In O'Brien the plaintiff's retaliation claim failed for lack of

15

evidence of causality – not because of her status as an ineligible/pre-eligible employee at the time she requested leave. 2019 WL 2642000, pg. 6. See also Beffert v. Pa. Dep't of Pub. Welfare, 05-cv-43, 2005 U.S. Dist. LEXIS 6681, at *9-10, 2005 WL 906362 (E.D. Pa. Apr. 18, 2005) (employee with six months on the job who notified employer of pregnancy protected from retaliation even though she was ineligible employee at the time she gave notice of need for leave, as she would be eligible employee at time of commencement of leave).

Defendants' reliance on Carpenter v. York Area United is also unavailing. The plaintiff in Carpenter was not an eligible employee because his worksite had fewer than fifty workers. 2020 WL 1904460 (M.D. Pa. April 17, 2020.) However, the Court did not decide whether that fact barred plaintiff's claim, because plaintiff was unable to prove a causal connection between his protected activity and adverse employment action. Id. at pg. 10. Even if the decision had not turned on causation, Carpenter would not be on point because the plaintiff was not pre-eligible, waiting for his entitlement to leave to kick in at some future date. He was never going to be eligible because the problem was there were too few employees at his worksite. Likewise Defendants' reliance on Hansler v. Lehigh Valley Health Network is not only unavailing, but bizarre. Hansler concerned an employee who submitted a request for leave without clearly identifying a "serious health condition." 2014 WL 1281132 (E.D. Pa. March 28, 2014). The Court of Appeals reversed the District Court's dismissal of the claim, expressly holding that the plaintiff could state a claim for retaliation, because the employer should have sought more information instead of summarily firing the plaintiff. 798 F.3d 149, 159 (3d. Cir. 2015).

In this case, Plaintiff Jones was days, not months, away from what ultimately became her eligibility date for FMLA/FFCRA leave, April 1, 2020. At the time of her request, neither she nor the employer even knew for sure what the date of her eligibility was, as Congress had passed

the FFCRA but the DOL had not yet promulgated a rule with the effective date for the Leave Provisions. Therefore, Plaintiff was either eligible or pre-eligible for leave and entitled to protection from interference and retaliation under the FMLA at the time of her termination.

For all of these reasons, Plaintiff has properly stated a claim under the Family and Medical Leave Act and Defendants' Motion should be denied.

### C. Plaintiff Has Stated A Claim Under the Fair Labor Standards Act

Defendants attempt to dismiss Plaintiff's FLSA claim by mischaracterizing what it is, insisting that it should be denied because Plaintiff does not state a minimum wage, classification or overtime violation. Indeed, Plaintiff does not state any of those things because her FLSA claim is for retaliation for invoking her rights, not for minimum wage, classification or overtime violations.

The FLSA contains an Anti-Retaliation Provision that forbids employers

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the Act], or has testified or is about to testify in such proceeding, or has served or is about to serve on an industry committee. §215(a)(3).

The Supreme Court has held that an employee who orally raises a concern about matters that implicate his rights under the FLSA is protected from retaliatory dismissal by this provision. Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 131 S.Ct. 1325 (2011). In Kasten, the employee raised a concern with a manager about the location of the company's time clocks. He was later terminated and sued for retaliation. The Supreme Court upheld the retaliation claim, noting that the Anti-Retaliation Provisions of the FLSA were intended to provide "broad rather than narrow protection to the employee." The Court stated that "the Act's remedial and

humanitarian purpose cautions against narrow, grudging interpretations of its language." Id. at 13, 1334.

The FFCRA amended the FLSA to provide Plaintiff with additional FLSA rights and remedies where an employer unlawfully denies an employee leave authorized by the FFCRA. See § 5105. Under § 5105 "an employer who willfully violates § 5102 (the leave requirement) shall be considered to have failed to pay minimum wages in violation of Section 6 of the Fair Labor Standards Act of 1938." Section 5105 further provides that an employer who violates § 5104 (wrongful termination/retaliation) shall be considered to be in violation of Section 15(a)(3) of the FLSA and shall be subject to the penalties in Sections 16 and 17 of the FLSA.

Accordingly, similarly to her FMLA retaliation claim, when Plaintiff invoked her right to leave, she was invoking her rights under the FLSA, as amended by the FFCRA. The broad protections of the FLSA's Anti-Retaliation Provisions prohibited Defendants from terminating her based on her invocation of her rights. Thus, Plaintiff's Amended Complaint states a valid claim for retaliation under the Fair Labor Standards Act and Defendants' Motion should be denied.

D. Plaintiff's Amended Complaint States a Valid Claim for Race Discrimination

Defendants' Motion to Dismiss Plaintiff's race discrimination claim is frivolous. Defendants simply pretend that the factual allegations in Paragraphs 42 through 48 do not exist.

Defendants claim that a Section 1981 claim must allege that defendants intentionally discriminated against plaintiffs because of their race. Defendants then go on to list the elements of the *prima facie* case as (1) plaintiff is a member of a racial minority, (2) intent to discriminate on the basis of race by the defendant, and (3) discrimination concerning one or more of the activities enumerated in the statute. Plaintiff Jones has articulated facts supporting each of those elements. Plaintiff is Black. Defendants intentionally treated her differently than non-Black

employees, in numerous ways listed in the Amended Complaint, including forbidding her from attending the Company's inaugural flight, allowing non-Black employees to delegate unpleasant tasks to her that were outside of her job description, treating her differently when it came to her desire to telecommute in the COVID-19 crisis, and most significantly, <u>firing her and replacing her with a non-Black man</u>.

Defendants' Motion to Dismiss Plaintiff's race discrimination claim should be denied.

## VI. <u>CONCLUSION</u>

The FFCRA and the CARES Act are nuanced statutes that balance the rights of workers with aid to small businesses who were all profoundly affected by the COVID-19 crisis. The Court should keep in mind two concepts when interpreting the law, "emergency" and "*quid pro quo*." The law was enacted quickly to give immediate relief to workers like Plaintiff <u>and</u> to businesses like Eastern Airlines. It contained pro-worker provisions, like the right to paid and unpaid leave under certain circumstances. It also contained pro-business provisions – the paid leave was ultimately paid by the United States taxpayers, because businesses received refundable tax credits for the paid leave they provided to their workers. Congress also granted enormous financial benefits to businesses, in the form of the airline bailout and Paycheck Protection Program loans, all intended to keep workers on the payroll during the emergency. Retaliating against workers who complied with their statutory obligation to give advance notice of leave is directly contrary to the legislative intent and makes a mockery of the laws under which employers received taxpayer money. This employer did the opposite of "we are all in this together." It took the money and, at the height of the emergency, fired Ms. Jones for complying with the law – while retaining similarly-situated non-Black employees. A more outrageous situation is hard to imagine.

For all of the foregoing reasons, Defendants' Motion to Dismiss the Amended Complaint should be denied.

Respectfully submitted,

Date: 7/30/2020

By: s/Edward C. Sweeney

M. Frances Ryan, Esquire
I.D. No. 62060
Edward C. Sweeney, Esquire
I.D. No. 64565
Wusinich & Sweeney, LLC
Attorneys for Plaintiff
211 Welsh Pool Road, Suite 236
Exton, PA 19341
(610) 594-1600
Validation of signature code: ECS1942