IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEPHANIE JONES                    :
                                   :        CIVIL ACTION
     v.                            :
                                   :        NO. 20-1927
EASTERN AIRLINES, LLC, ET AL.      :

## MEMORANDUM

**SURRICK, J.**                                      **JUNE  16 , 2021**

This is an employment discrimination case.  Plaintiff Stephanie Jones alleges that she was

terminated because she requested leave under the Families First Coronavirus Response Act

("FFCRA"), 29 U.S.C. § 2601 *et seq*., to care for her school-aged son after his school closed in

response to the COVID-19 global pandemic.  Plaintiff also contends that she was terminated on

account of her race.  She asserts claims under the FFCRA, the Family and Medical Leave Act

("FMLA"), 29 U.S.C. § 2601 *et seq*., and under the Fair Labor Standards Act ("FLSA"), 29

U.S.C. § 201 *et seq*.  Presently before the Court is Defendants' Motion to Dismiss Plaintiff's

Amended Complaint.  (Mot., ECF No. 7.)  For the following reasons, Defendants' Motion will

be granted in part and denied in part.

## I.    BACKGROUND[1]

Defendant Eastern Airlines, LLC is a corporation with its principal place of business in

Chester County, Pennsylvania.  Eastern Airlines employs between 50 and 500 employees.  (Am.

Compl. ¶¶ 2, 4, 7, 40, ECF No. 6.)  Defendant Steve Harfst is the Chief Executive Officer for

---

[1] When considering a motion to dismiss, the Court must accept as true all factual
allegations in the plaintiffs' complaint and construe the facts alleged in the light most favorable
to the plaintiffs.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing
*Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

Eastern Airlines.  (*Id.* ¶ 6.)  Defendant Joseph Marotta is the Human Resource Consultant for

Eastern Airlines.  (*Id.* ¶ 5.)  Both Harfst and Marotta worked for Eastern Airlines in Chester

County.  (*Id.* ¶¶ 5-6.)

      Plaintiff Stephanie Jones is a Black woman.  (*Id.* ¶ 42.)  She resides in Chester County.

(*Id.* ¶¶ 2, 3.)  On October 1, 2019, Plaintiff was hired by Eastern Airlines for the position of

Director of Revenue Management with an annual salary of $125,000 plus benefits.  (*Id.* ¶ 10.)

Like Harfst and Marotta, Plaintiff worked for Eastern Airlines in Chester County.  (*Id.* ¶ 2.)  At

Eastern Airlines, Plaintiff was the only Black Director and she was one of only a few Black

women in management.  (*Id.* ¶ 42.)  Plaintiff alleges that during her employment with Eastern

Airlines, she was treated differently than "similarly-situated non-Black employees."  (*Id.* ¶ 43.)

For example, in mid-January of 2020, Eastern Airlines invited "similarly-situated non-Black

employees and third-party vendors" to attend the inaugural flight to Ecuador.  (*Id.*)  Eastern

Airlines did not invite Plaintiff.  (*Id.*)  In the airline industry, it was typical that a person in her

position would attend such an event.  (*Id.*)  Also, non-Black employees delegated menial or

unpleasant tasks to Plaintiff that were not within her normal job duties.  (*Id.* ¶ 44.)  Plaintiff

alleges that this treatment was due to her race.  (*Id.* ¶ 47.)  In addition, management displayed

negative attitudes toward Black people.  (*Id.* ¶ 46.)  For example, on Martin Luther King, Jr.

Day, Harfst commented about a customer, "These people will take off for anything."  (*Id.*)

      Plaintiff is a single mother with an 11-year-old son.  (*Id.* ¶ 11.)  Due to COVID-19, her

son's school closed.  (*Id.* ¶ 12.)  At the time, Plaintiff's elderly mother, who suffers from asthma,

was also sick and experiencing a severe cough.  (*Id.* ¶ 45.)  Because of her son's school closure

and her mother's illness, Plaintiff began working from home.  (*Id.*)  Plaintiff was able to perform

all her job duties from home.  (*Id.*)  "Similarly-situated non-Black, non-African-American employees" also began working from home at that time.  (*Id.*)

At some point, management requested that Plaintiff return to the office.  (*Id.*)  Because of her son's school closure and her mother's illness, Plaintiff preferred to continue working from home.  (*Id.*)  Plaintiff had discussions with her supervisor John Bustos about her options.  (*Id.* ¶ 17.)  Meanwhile, "[s]imilarly-situated non-Black, non-African-American employees" were permitted to continue working from home.  (*Id.* ¶ 45.)  Management did not explain why Plaintiff had to return to the office but "non-Black employees" did not.  (*Id.*)

On March 18, 2020, Congress enacted the Families First Coronavirus Response Act ("FFCRA").  (*Id.* ¶ 15.)  Two days later, on March 20, 2020, the DOL issued a press release telling people to take advantage of the FFCRA immediately.  (*Id.*)  The DOL press release did not state that the FFCRA would not take effect until April 1, 2020.  (*Id.*)  That same day, at noon, Plaintiff asked Bustos for 2 hours of flex time each day to handle childcare issues and she requested permission to continue to work from home.  (*Id.* ¶ 18.)  Bustos did not respond to either request.  (*Id.*)  A few hours later, Plaintiff directed these requests to Vice President of Commercial Ken Johnson.  (*Id.*)  Johnson did not respond.  (*Id*.)  About an hour later, Plaintiff emailed Manager of Compliance Programs in Human Resource Kim Kelleher about her options in light of her son's school closure.  (*Id.* ¶ 19.)  Kelleher forwarded Plaintiff's email to Marotta but did not respond to Plaintiff.  (*Id.* ¶ 20.)

Two days later, on March 22, 2020, Plaintiff sent Bustos and Johnson a follow-up email.  (*Id.* ¶ 21.)  The next day, on March 23, 2020, Plaintiff had a tele-meeting with Marotta.  (*Id.* ¶ 22.)  Plaintiff asked Marotta about her eligibility for the FFCRA.  (*Id.* ¶ 23.)  Marotta responded that Plaintiff was eligible for leave and that her options were either to resign or take leave.  (*Id.* ¶

3

25.)  The next day, on March 24, 2020, Plaintiff emailed Marotta, copying Harfst, and requested "expanded family and medical leave under the Families First Coronavirus Response Act."  (*Id.* ¶¶ 26, 28.)  Marotta responded that he would contact Plaintiff shortly.  (*Id.* ¶ 29.)  On March 25, 2020, the DOL posted a model notice for employers to disseminate to employees regarding employee rights under the FFCRA.  (*Id.* ¶ 16.)  Over the next couple of days, Plaintiff did not hear from Marotta or anyone else about her eligibility or rights under the FFCRA or the FMLA or any other statute.  (*Id.* ¶¶ 30, 32.)  Eastern Airlines also did not complete the FFCRA paperwork as requested by Plaintiff.  (*Id.* ¶ 31.)  During that time, however, several employees contacted Plaintiff inquiring how to do certain aspects of Plaintiff's job duties.  (*Id.* ¶ 38.)

On March 27, 2020, Marotta called Plaintiff and terminated her employment over the phone.  (*Id.* ¶¶ 33-34.)  Marotta stated that these were unprecedented times, and that Plaintiff's termination was in the best interest of the parties.  (*Id.* ¶ 35.)  Marotta also claimed that Johnson and Harfst had told him that Plaintiff had conflicts with other employees.  (*Id.* ¶¶ 35, 37.)  Plaintiff denied any conflicts and stated that there was no documentation of any such conflicts. (*Id.* ¶ 36.)

Neither Marotta nor anyone else in management ever responded to Plaintiff's leave request.  (*Id.* ¶ 39.)  Plaintiff believes that she was terminated by Eastern to avoid having to accommodate her under the FFCRA, to punish her for requesting leave, and because she is Black.  (*Id.* ¶¶ 41, 47.)  Plaintiff has lost wages due to her termination.  (*Id.* ¶¶ 49, 55.)

Eastern Airlines received a bailout of at least $9,259,648 under the CARES Act from the U.S. government to support its payroll due to complications from the COVID-19 crisis.  (*Id.* ¶ 9.) Shortly after terminating Plaintiff, Eastern Airlines hired a non-Black man to replace Plaintiff. (*Id.* ¶ 48.)

On July 2, 2020, Plaintiff filed an Amended Complaint.  (Am. Compl.)  She asserts claims of FMLA/ FFCRA/ FLSA interference (Counts I, II, and III), FMLA/ FFCRA/ FLSA retaliation (Counts IV, V, and VI), and employment discrimination on the basis of race and/or color in violation of Section 1981 (Count VII).

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  A motion under Rule 12(b)(6) tests the sufficiency of the complaint against the pleading requirements of Rule 8(a).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed.  *See Fowler*, 578 F.3d at 211.  Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements. . . ."  *Iqbal*, 556 U.S. at 678.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id*. at 679.  This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

Evaluation of a Rule 12(b)(6) motion entails a three-step analysis:  (1) "[the district court] must tak[e] note of the elements [the] plaintiff must plead to state a claim"; (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth'"; and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).  The plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

## III.   DISCUSSION

Defendants' Motion raises various arguments seeking dismissal of all Plaintiff's claims under Rule 12(b)(6).  Essentially, Defendants dispute Plaintiff's eligibility for the FFCRA and the plausibility of her Section 1981 claim.

### A.   Plaintiff's eligibility for the FFCRA

To assess Plaintiff's eligibility for the FFCRA, we conduct a careful analysis of several documents.  We begin by summarizing the relevant provisions of the FFCRA.  Next, we address Pennsylvania's stay-at-home order.  Finally, we examine the Secretary of Labor's Final Rule on the FFCRA.

#### 1.   The FFCRA

"COVID-19 [is] a novel severe acute respiratory illness that has killed . . . more than 1[6]0,000 nationwide" to date.  *South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020); *see also Coronavirus Disease 2019 (COVID-19): Cases and Deaths in the U.S.*, Centers for Disease Control and Prevention (accessed Aug. 18, 2020),

https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/us-cases-deaths.html.  "At this time,

there is no known cure, no effective treatment, and no vaccine.  Because people may be infected

but asymptomatic, they may unwittingly infect others."  *South Bay United Pentecostal Church*,

140 S. Ct. at 1613.  "This extraordinary crisis has required public and private entities alike to act

decisively and swiftly in the face of massive uncertainty."  *New York v. United States DOL*, No.

20-3020, 2020 U.S. Dist. LEXIS 137116, at *34 (S.D.N.Y. Aug. 3, 2020).

In light of the ongoing COVID-19 pandemic, on March 18, 2020, Congress enacted the

FFCRA.  The purpose of the FFCRA is "to provide relief to American workers and to promote

public health."  *Id.* at *3 (citing Pub. L. No. 116-127, 134 Stat. 178 (Mar. 18, 2020)).

The FFCRA applies to private sector employers that employ less than 500 employees and to

certain public sector employers.   FFCRA §§ 3102(b) and 5110(2)(B).  The instant matter

implicates two major provisions of the FFCRA, which will be discussed below.

a.  The EFMLEA

One of the major provisions of the FFCRA is the Emergency Family and Medical Leave

Expansion Act ("EFMLEA").  The EFMLEA is an amendment to the Family and Medical Leave

Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.  FFCRA § 3102.  The EFMLEA entitles employees to

leave for a term of twelve weeks if they are unable to work or telework because they must care

for a son or daughter under the age of 18 whose elementary or secondary school or place of care

closed due to COVID-19 or whose paid childcare provider is unavailable due to COVID-19.

FFCRA §§ 3102(a)(2) and 3102(b).  Employees who have worked for their employer for at least

30 calendar days are eligible for the EFMLEA.  FFCRA § 3102(b).  The FFCRA provides that

employers will receive a tax credit "equal to 100 percent of the qualified family leave wages paid

by such employer."  FFCRA § 7003(a).

The FFCRA provides that EFMLEA coverage begins on the date the EFMLEA "takes effect, and end[s] on December 31, 2020." FFCRA § 3102(a)(1)(F). It also provides that "[t]his Act shall take effect not later than 15 days after the date of enactment of this Act." FFCRA § 3106. Although the FFCRA clearly provides a sunset date for EFMLEA coverage, the effective date is not clear.

The FFCRA gives the Secretary of Labor the authority to issue regulations "for good cause:" (1) to exclude certain health care providers and emergency responders from eligibility for the EFMLEA; and (2) to exempt small businesses with less than 50 employees from the EFMLEA requirements if such requirements would "jeopardize the viability of the business as a going concern." FFCRA § 3102(b).

### b. The EPSLA

Another major provision of the FFCRA is the Emergency Paid Sick Leave Act ("EPSLA"). The EPSLA requires covered employers to provide paid sick leave to employees who are unable to work or telework due to one of six qualifying COVID-19-related conditions. FFCRA §§ 5102 and 5110(2). Two of the qualifying COVID-19-related conditions are "[t]he employee is subject to a Federal, State, or local quarantine or isolation order related to COVID-19" and "[t]he employee is caring for a child whose school or place of care is closed, or whose childcare provider is unavailable, because of COVID-19." FFCRA § 5102(a). Full-time employees are entitled to 80 hours of paid sick leave while part-time employees are entitled to paid sick leave for "a number of hours equal to the number of hours that such employee works, on average, over a 2-week period." FFCRA 5102(b)(2). A covered employer that violates the EPSLA is in violation of the FLSA. FFCRA § 5105. The FFCRA provides that employers will

receive a tax credit "equal to 100 percent of the qualified sick leave wages paid by such employer." FFCRA § 7001(a).

As indicated above, like the EFMLEA, the FFCRA clearly provides for a sunset date for EPSLA coverage, but not an effective date. *See* FFCRA §§ 5108 and 5109 ("This Act, and the requirements under this Act, shall take effect not later than 15 days after the date of enactment of this Act. . . . This Act, and the requirements under this Act, shall expire on December 31, 2020."). However, the FFCRA does clearly state that paid sick leave under EPSLA "shall be available for immediate use by the employee." FFCRA § 5102(e)(1).

The FFCRA gives the Secretary of Labor the authority to issue regulations "for good cause": (1) to exclude certain health care providers and emergency responders from eligibility for the EPSLA; (2) to exempt small businesses with less than 50 employees from the EPSLA requirements if such requirements would "jeopardize the viability of the business as a going concern;" and (3) "as necessary to carry out the purposes of this Act." FFCRA § 5111.

### 2. *Pennsylvania Governor Tom Wolf's March 23, 2020 stay-at-home order*

In light of the ongoing COVID-19 pandemic, on March 23, 2020, Pennsylvania Governor Tom Wolf signed an Order directing all individuals residing in certain counties, including Chester County where Plaintiff resides, "to stay at home except as needed to access, support, or provide life sustaining business, emergency, or government services." Order of the Governor of the Commonwealth of Pennsylvania for Individuals to Stay at Home, March 23, 2020 (accessed Aug. 18, 2020), https://www.scribd.com/document/452929592/03-23-20-TWW-COVID-19-Stay-at-Home-Order. Governor Wolf made this Order "effective immediately" until April 6, 2020. *Id*.

   3.   *The Secretary of Labor's Final Rule*

   On April 6, 2020, the Secretary of Labor promulgated a Final Rule providing temporary

regulations to implement the EFMLEA and the EPSLA.  *See* 85 Fed. Reg. 19,326 (Apr. 6, 2020).

The Secretary bypassed advance notice and comment in promulgating the Final Rule because:

> [t]he COVID-19 pandemic has escalated at a rapid pace and scale, leaving
> American families with difficult choices in balancing work, child care, and the need
> to seek medical attention for illness caused by the virus.  To avoid economic harm
> to American families facing these conditions, a decision to undertake notice and
> comment rulemaking would likely delay final action on this matter by weeks or
> months, and would, therefore, complicate and likely preclude the Department from
> successfully exercising the authority created by sections 3106 and 5108.  Moreover,
> such delay would be counter to one of the FFCRA's main purposes in establishing
> paid leave:  *enabling employees to leave the workplace now to help prevent the
> spread of COVID-19.*

*Id*. at 19,342. (emphasis added).

   The Secretary's Final Rule "is effective from April 2, 2020, through December 31,

2020" and "became operational on April 1, 2020."  *Id.* at 19,357.  The Secretary's Final

Rule provides as follows:

> The Department is issuing this temporary rule to carry out the purposes of the
> FFCRA.  These new paid sick leave and expanded family and medical leave
> requirements became operational on April 1, 2020, effective on April 2, 2020, and
> will expire on December 31, 2020.

*Id*. at 19,327.

   The Final Rule explains how the ESPLA and the EFMLEA interact when an employee

qualifies for both types of leave to care for a son or daughter because of a school or place of care

closure or childcare unavailability due to COVID-19-related reasons:

> Generally, when an employee qualifies for leave under both Acts, an employee may
> first use the two weeks of paid leave provided by the EPSLA.  This use runs
> concurrent with the first two weeks of unpaid leave under the EFMLEA.  Any
> remaining leave taken for this purpose is paid under the EFMLEA. . . . After the
> first two weeks of leave, expanded family and medical leave is paid at two-thirds
> the employee's regular rate of pay, up to $200 per day.

*Id*. at 19,337.

The Final Rule further provides that "[a]n Employer shall permit an Employee to *immediately* use the Paid Sick Leave and Expanded Family and Medical Leave to which he or she is entitled under the EPSLA and the EFMLEA." *Id*. at § 826.160(a)(2) (emphasis added). "However, no Employer is obligated or required to provide, and no Employee has a right or entitlement to receive, any retroactive reimbursement or financial compensation through Paid Sick Leave or Expanded Family and Medical Leave for any unpaid or partially paid leave taken prior to April 1, 2020, even if such leave was taken for COVID-19-reated reasons." *Id*. Although the Final Rule clearly excludes an employee's entitlement to retroactive reimbursement for leave taken prior to April 1, 2020 due to COVID-19-related reasons, it does not comment on whether such an employee would be protected by any other provision of the FFCRA.

### B.    Plaintiff is Eligible under the FFCRA

Plaintiff and Defendants dispute when the FFCRA went into effect.  Plaintiff argues that, absent a clearly defined effective date and clear direction from Congress otherwise, the FFCRA took effect immediately upon enactment, on March 18, 2020.  *See Johnson v. United States*, 529 U.S. 694, 702 (2000) (noting that "the general rule [is] that when a statute has no effective date, absent a clear direction by Congress to the contrary, it takes effect on the date of its enactment.") (internal citations and quotation marks omitted); *see also United States v. Farmer*, 419 F. App'x 163, 167 (3d Cir. 2011) (relying on *Johnson* and holding that the effective date of 18 U.S.C. § 3583(i) is the date of enactment); *United States v. Way*, 386 F. App'x 64, 66 (3d Cir. 2010) (same).

Defendants argue that, per the Final Rule promulgated by the Secretary of Labor, the FFCRA did not take effect until April 2, 2020. However, the Secretary's Final Rule does not entirely rule out relief for Plaintiff. According to the Final Rule, Plaintiff would not be eligible for reimbursement for wages lost due to COVID-19-related reasons prior to April 1, 2020. Nevertheless, the Final Rule does not address whether Plaintiff would be eligible for any other provision of the FFCRA prior to April 1, 2020.

In further support of their argument, Defendants draw our attention to several decisions regarding the non-retroactivity of remedial statutes such as Title VII, the ADA, the ADAAA, and the FMLA. (*See* Mot. 6-11.) We are not persuaded by the reasoning behind these decisions because none of these remedial statutes were enacted to provide *emergency* relief to American workers being *immediately* impacted by an *ongoing* national crisis.

All the events alleged in Plaintiff's Amended Complaint occurred after the enactment of the FFCRA. At this juncture, we are satisfied that Plaintiff has plausibly alleged entitlement to at least the provisions of the FFCRA that do not involve financial reimbursement. We come to this conclusion after careful consideration of: (1) the overall purpose of the FFCRA as well as its provisions for a clearly defined sunset date but not a clearly defined effective date; (2) the Secretary's Final Rule which bypassed notice and comment due to the exigency created by the COVID-19 pandemic; and (3) Governor Wolf's stay-at-home Order directed at, *inter alia*, Plaintiff, effective four days before Plaintiff's termination. Accordingly, Defendants' Motion will be denied as to Plaintiffs' claims under the FFCRA, FLSA, and FMLA.

**B.      The plausibility of the Section 1981 claim**

Section 1981 provides that:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give

evidence, and to the full and equal benefit of all laws and proceedings for the
security of persons and property as is enjoyed by white citizens, and shall be subject
to like punishment, pains, penalties, taxes, licenses, and exactions of every kind,
and to no other.

42 U.S.C. § 1981.  Under Section 1981, it is unlawful for an employer to discriminate against

any individual with respect to employment and/or employment-related matters because of that

individual's race and/or color.  In order for a Section 1981 claim to survive a motion to dismiss,

a plaintiff must plausibly allege that:  (1) the plaintiff is a member of a protected class; (2) she is

qualified for the position or satisfactorily performed the duties required by her position; and (3)

she suffered an adverse employment action.  *See Wallace v. Federated Dep't Stores, Inc.*, 214 F.

App'x 142, 144-45 (3d Cir. 2007).  In addition, the U.S. Supreme Court recently held that a

plaintiff must also plausibly allege that race was a but-for cause of the adverse employment

action.  *See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1014-

15 (2020).  One district court has noted that "at the pleading stage, that hurdle is easily

surmounted."  *Calvelos v. City of N.Y.*, 2020 U.S. Dist. LEXIS 109266, at *34 (S.D.N.Y. June

22, 2020).  "[T]he plaintiff must allege facts that allow the court to infer the defendant's intent

to discriminate on the basis of race."  *Id.* at *26.

  For example, an inference of discrimination can be supported by allegations "that

similarly situated individuals outside the plaintiff's class were treated more favorably [than the

plaintiff]."  *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 273 (3d Cir. 2010) (citations

omitted).  "While similarly situated does not mean identically situated, the plaintiff must

nevertheless be similar in all relevant respects."  *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220,

222-23 (3d Cir. 2009) (citation and internal quotation marks omitted).  The Third Circuit has

noted that relevant factors include "showing that the two employees dealt with the same

supervisor, were subject to the same standards, and had engaged in similar conduct without such

differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* at 223 (citation and internal quotation marks omitted).

Plaintiff pleads examples of how Defendants treated her differently than "similarly-situated non-Black employees" and "similarly-situated non-Black, non-African-American employees." (Am. Compl. ¶¶ 43, 45.) Although these allegations show that Plaintiff was treated differently than her non-Black coworkers, they do not show that these coworkers were similarly situated to Plaintiff. *See, e.g.*, *Clemena v. Phila. Coll. of Osteopathic Med.*, No. 17-428, 2017 U.S. Dist. LEXIS 127707, at *11 (E.D. Pa. Aug. 11, 2017) (dismissing employment discrimination claim because "based on the meager factual allegations pled regarding the requirements of the vacant position, it is impossible to ascertain whether the individual selected was similarly situated to Plaintiff but treated differently by Defendant."); *Jenkins v. Polysciences, Inc.*, No. 16-6616, 2017 U.S. Dist. LEXIS 47429, at *9 (E.D. Pa. Mar. 29, 2017) (dismissing employment discrimination claim where "Plaintiff merely asserts the legal conclusion that he was treated differently than 'similarly situated Caucasian . . . employees,' rather than specifically alleging that the employee to whom he compared himself was involved in the same conduct and had the same or a similar job title.").

In addition to direct comparator allegations, an inference of discrimination can also be supported by allegations "of similar racial discrimination of other employees, or [allegations] of discrimination from statements or actions by [the plaintiff's] supervisors suggesting racial animus." *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 n.2 (3d Cir. 2010); *see also Hobson v. St. Luke's Hosp. & Health Network*, 735 F. Supp. 2d 206, 214 (E.D. Pa. 2010). Plaintiff pleads that management displayed negative attitudes toward Black people. Despite the gravity of this allegation, Plaintiff provides only one example: on Martin Luther King, Jr. Day,

14

Harfst commented about a customer, "These people will take off for anything."  (Am. Compl. ¶ 46.)  We cannot infer racial animus from this comment since the race and/or color of the customer is not alleged.  In addition, this comment was not directed at Plaintiff or about Plaintiff and allegedly was uttered over two months before the COVID-19 pandemic and Plaintiff's termination.   In any event, "[a] stray remark standing on its own is unlikely to be sufficient to demonstrate discriminatory animus." *Pierce-Schmader v. Mount Airy Casino & Resort*, No. 13-1141, 2014 U.S. Dist. LEXIS 162710, at *11 (M.D. Pa. Nov. 20, 2014); *see also De La Peña v. Metro. Life Ins. Co.*, 953 F. Supp. 2d 393, 413 (E.D.N.Y. 2013) *aff'd De La Pena v. Metro. Life Ins. Co.*, 552 Fed. Appx. 98 (2d Cir. 2014) (on a motion to dismiss noting that the supervisor's alleged comment that "Filipinos were heavy beer drinkers" was "so far removed in time and with such a tangential relationship to the [Filipino] Plaintiff's ultimate discharge, [that it] can be characterized as a 'stray remark' which does not constitute sufficient evidence to state a case for employment discrimination").

Finally, Plaintiff pleads that she was replaced by a non-Black man.  This allegation alone, without more, is insufficient for us to infer race and/or color discrimination.  *See*, *e.g.*, *Jenkins*, 2017 U.S. Dist. LEXIS 47429, at *9 (concluding that the plaintiff had failed to plead "any facts that would allow this Court to infer racial discrimination" even though the plaintiff had alleged that he was replaced by a non-African-American person); *Wilkins v. Bozzuto & Assocs.*, No. 09-2581, 2009 U.S. Dist. LEXIS 115776, at *9 (E.D. Pa. Dec. 10, 2009) ("Plaintiff does not offer facts that suggest that he was treated differently in the performance of his employment contract than any individual of another race, and the fact that a non-African-American individual was hired to replace him is not sufficient to support a 'reasonable expectation' that evidence of racial animus would be revealed in discovery.").  Defendants' Motion will be granted as to Plaintiff's

race and/or color discrimination claim.  Accordingly, Plaintiff's Section 1981 claim will be dismissed without prejudice.  Plaintiff may amend her complaint to cure these deficiencies.

IV.    **CONCLUSION**

For the foregoing reasons, Defendants' Motions to Dismiss will be granted in part and denied in part.

An appropriate Order follows.

**BY THE COURT:**


*/s/R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**